No. 24-600

# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

───────────

NORTH BREVARD COUNTY HOSPITAL DISTRICT D/B/A PARRISH MEDICAL CENTER,

*Petitioner*,

*v.*

C. R. BARD, INC. AND BARD ACCESS SYSTEMS, INC.,

*Respondents.*

───────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
THE HONORABLE ROBERT J. SHELBY, CHIEF DISTRICT JUDGE
CASE NO. 2:22-CV-00144-RJS-JCB

───────────

# C. R. BARD, INC. AND BARD ACCESS SYSTEMS, INC.'S ANSWER IN OPPOSITION TO PARRISH MEDICAL CENTER'S PETITION FOR PERMISSION TO APPEAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(f)

───────────

ANDREW J. FRACKMAN
  *Counsel of Record*
COLLEEN POWERS
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061

SERGEI ZASLAVSKY
BRIAN P. QUINN
EMILY MURPHY
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

*Attorneys for C. R. Bard, Inc. and Bard Access Systems, Inc.*

*(additional counsel listed on next page)*

ANDREW G. DEISS
COREY D. RILEY
DEISS LAW PC
10 West 100 South
Suite 700
Salt Lake City, UT 84101
Telephone: (801) 433-0226
Facsimile: (801) 341-1662

*Attorneys for C. R. Bard, Inc.
and Bard Access Systems, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Respondents C. R. Bard, Inc. and Bard Access Systems, Inc. state the following:

C. R. Bard, Inc. is a wholly-owned subsidiary of Becton, Dickinson and Company, a publicly traded company. No other publicly-held corporation owns 10% or more of C. R. Bard, Inc.'s stock.

Bard Access Systems, Inc. is a wholly-owned subsidiary of Becton, Dickinson and Company, a publicly traded company. No other publicly-held corporation owns 10% or more of Bard Access Systems, Inc.'s stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ................................. i

TABLE OF AUTHORITIES ........................................................ iii

GLOSSARY ............................................................................ vi

STATEMENT OF PRIOR OR RELATED APPEALS ................. viii

INTRODUCTION ...................................................................... 1

COUNTERSTATEMENT OF FACTS ........................................... 2

ARGUMENT .............................................................................. 5

    I.     Parrish's petition does not present an unresolved issue of law relating to class actions that is likely to evade end-of-case review. ................................................................. 6

    II.    The district court did not make manifest errors in considering evidence and making findings essential to its Rule 23 determination. ..................................................... 15

    III.   The district court did not err in denying certification of a Rule 23(b)(2) class. ........................................................ 21

CONCLUSION .......................................................................... 23

FEDERAL RULE OF APPELLATE PROCEDURE 28(f) ADDENDUM ........................................................................... 25

CERTIFICATE OF COMPLIANCE .......................................... 28

CERTIFICATE OF DIGITAL SUBMISSION ............................. 29

CERTIFICATE OF SERVICE .................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black v. Occidental Petroleum Corp.*,
   69 F.4th 1161 (10th Cir. 2023) .............................................. 6, 7, 8, 11

*Caridad v. Metro-North Commuter Railroad*,
   191 F.3d 283 (2d Cir. 1999) ................................................ 13

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ........................................... 16, 17

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) .................................... 5, 15, 21

*City of Pomona v. SQM North America Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ........................................... 13

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ............................... 4, 10, 11, 12, 13, 20, 21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ............................................. 1, 5, 9, 13

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................ 13

*In re Hydrogen Peroxide Antitrust Litigation*,
   552 F.3d 305 (3d Cir. 2008) ............................................. 18

*In re Initial Public Offering Securities Litigation*,
   471 F.3d 24 (2d Cir. 2006) ........................................... 13, 14

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
   934 F.3d 619 (D.C. Cir. 2019) ........................................... 15

*National ATM Council, Inc. v. Visa, Inc.*,
   No. 21-7109, 2023 WL 4743013 (D.C. Cir. July 25, 2023) .......... 14, 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ................................................. 12, 13

*Tabor v. Hilti, Inc.*,
703 F.3d 1206 (10th Cir. 2013) ......................................................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ...................................................... 7, 8, 12, 15, 20

*Vallario v. Vandehey*,
554 F.3d 1259 (10th Cir. 2009) ......................5, 6, 8, 15, 16, 21, 22, 23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................. 8, 9, 11, 12, 13, 19

*Windham v. American Brands, Inc.*,
565 F.2d 59 (4th Cir. 1977) ............................................................... 18

**Statutes**

15 U.S.C. § 1 ................................................................................................. 3

15 U.S.C. § 2 ............................................................................................. 3, 6

15 U.S.C. § 4304 ......................................................................................... 6

**Other Authorities**

Petition of Defendants Pursuant to Federal Rule of Civil Procedure 23(f), *Occidental Petroleum Corp. v. Deselms*, No. 22-704 (10th Cir. May 10, 2022), Doc. No. 010110682866. ....................... 6

**Rules**

Fed. R. Civ. P. 23 ..................................................................... 1-16, 18-23

Fed. R. Civ. P. 65 ........................................................................... 22, 23

iv

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Treatises**

6 NEWBERG & RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022) .............. 18

AMERICAN BAR ASSOCIATION, PROVING ANTITRUST DAMAGES:
    LEGAL AND ECONOMIC ISSUES (2017 ed.) ........................................... 17

AREEDA & HOVENKAMP, ANTITRUST LAW: AN ANALYSIS OF
    ANTITRUST PRINCIPLES AND THEIR APPLICATION (4th & 5th eds.
    2023) ................................................................................................. 17

# GLOSSARY

**Parties**

| | |
|---|---|
| Bard | C. R. Bard, Inc. and Bard Access Systems, Inc. |
| Parrish | North Brevard County Hospital District d/b/a Parrish Medical Center |

**Briefs**

| | |
|---|---|
| Pet. _ | Petition of Plaintiff Pursuant to Federal Rule of Civil Procedure 23(f) for Leave to Appeal From the District Court's Class Certification Order, No. 24-600 (10th Cir. Jan. 10, 2024), Dkt. No. 010110981799 |

**District Court Docket**

| | |
|---|---|
| Dkt. _ | Docket entries in *North Brevard County Hospital District v. C. R. Bard, Inc.*, No. 2:22-cv-00144-RJS-JCB (D. Utah) |
| MT-_ | Transcript of Deposition of Dr. Eugenio Miravete (Jan. 23, 2023), *North Brevard County Hospital District v. C. R. Bard, Inc.*, No. 2:22-cv-00144-RJS-JCB (D. Utah), Dkt. No. 158-2; 159-1 (sealed version) |
| HT-_ | Transcript of Class-Certification Hearing (Nov. 14, 2023), *North Brevard County Hospital District v. C. R. Bard, Inc.*, No. 2:22-cv-00144-RJS-JCB (D. Utah), Dkt. No. 194-2 |

| | |
|---|---|
| MDO:_ | Memorandum Decision and Order Denying Class Certification, *North Brevard County Hospital District v. C. R. Bard, Inc.* (D. Utah Dec. 27, 2023), Dkt. No. 192 |

**Terms of Art**

| | |
|---|---|
| PICC | Peripherally Inserted Central Catheter |
| TLS | Tip Location System |

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## INTRODUCTION

Parrish's Rule 23(f) petition does not present any issue that merits interlocutory review, and the Court should deny it. There is no manifest error to correct here, nor any burning legal question to resolve. The district court afforded the parties a hearing, rigorously analyzed the evidence, applied the correct legal standard, and issued a comprehensive order denying Parrish's class-certification motion on multiple, independent grounds. Neither the process nor the outcome was exceptional, particularly in light of Parrish's paltry factual presentation.

Facing that reality, Parrish swings for the fences and advances an extreme reading of Rule 23 that is inconsistent with prior holdings of this Court and the Supreme Court. Parrish insists that Rule 23 *required* the district court to credit Parrish's expert, disregard contrary evidence, and certify the class—absent a ruling on Bard's motion to exclude (which the court deferred) or an explicit finding that no reasonable juror could credit Parrish's expert's testimony.

That is not the law. A district court's role under Rule 23 does not begin and end with a decision that the movant's expert testimony is admissible. That would collapse the Rule 23 inquiry into a *Daubert* challenge. Nor does a district court usurp the jury's role by considering all of the evidence—including rebuttal expert testimony—and concluding that the movant fails to prove compliance with Rule 23.

Parrish's approach would contravene settled precedent, subvert the district court's role under Rule 23, and permit certification even when the evidence fails to meet that Rule's requirements.

Finally, here, in contrast to other cases, the district court did not need to resolve a dispute between experts or exclude Parrish's expert to deny Parrish's motion. Parrish and its expert *conceded* that their approach did not satisfy Rule 23. Over and over again—in its expert's deposition, in its motion papers, and at oral argument—Parrish surrendered the facts that defeated its motion. No case holds that a court must certify a class in the face of a glaring failure of proof, and on the basis of a movant's mere promise to fix those defects at some point in the future. This Court should deny Parrish's Rule 23(f) petition.

## COUNTERSTATEMENT OF FACTS

Bard manufactures and sells PICCs—thin tubes that deliver medications to a patient's heart. It sells a wide variety of PICCs (and scores of different combinations of PICC products), some with its TLS-stylet preloaded ("technology PICCs"),[1] and others without the TLS-stylet ("standalone PICCs").[2] Bard does not sell the TLS-stylet

---

[1] A stylet is an internal wire that helps guide the PICC near a patient's heart. MDO:2-3.

[2] MDO:27 ("As Parrish acknowledges, a wide variety of different types of purchasers—with varying degrees of bargaining power, distinct product needs, and preferences—negotiate with Bard to purchase a

separately. MDO:3. Parrish claims that by only selling the TLS-stylet preloaded in its technology PICCs, Bard unlawfully ties its PICCs to its TLS-stylet in violation of Sherman Act § 2, 15 U.S.C. § 2.[3] MDO:3-4.

Parrish, a Florida hospital, never bought Bard's technology PICCs and therefore never bought the TLS-stylet. Yet it seeks to represent a class of *all* Bard PICC purchasers, including those—like Parrish—who were never subject to the alleged tie. MDO:4-5.

Parrish moved for certification under Rules 23(b)(3) and 23(b)(2), Dkt. 139, and relied exclusively on the report of an economist, Dr. Eugenio Miravete. Miravete presented a two-part analysis: (1) a "common factors" regression that purported to show that observable factors account for 86% of PICC price variation; and (2) four "benchmarks" purporting to estimate the average overcharge the tie caused throughout the entire PICC market. MDO:24-25.

At his deposition, Miravete conceded that:

- His model was incapable of determining antitrust impact for any given class member without "additional discovery," MT-60:1-4, 72:2-5, 85:17-20;

---

wide variety of PICC products in unique configurations. There is no standard price, no standard product, and no standard purchaser.").

[3] The district court dismissed Parrish's primary claim under Sherman Act § 1, 15 U.S.C. § 1, because Parrish—which only purchases the allegedly "tied" product (the PICC) and not the "tying" product (the TLS-stylet)—failed to establish antitrust standing. Dkt. 136.

- His "common factors" regression demonstrated only that PICCs are differentiated products and that his benchmarks estimated only "an average overcharge," MT-69:8-14, 70:11-72:17, 74:4-10, 77:3-6; and

- His benchmarking methodology did not disaggregate lawful from unlawful components of Bard's margins, MT-113:10-17, 122:4-11.

In the face of these concessions, Parrish's principal argument at the hearing was that it need not present a workable methodology to satisfy Rule 23. HT-91:21-92:1. ("[The Court]: How do I answer the *Comcast* question for consumers who bought the bundle today not knowing when or how we're going to learn what the actual antitrust injury is for those customers[?]" … [Parrish]: Wait for the merits report. Wait for the discovery."). In its class-certification brief, Parrish likewise asserted that Miravete could expand his work to meet the requirements of Rule 23 "[w]ith the aid of additional discovery." Dkt. 139 at 17.

But by the time of the argument, Parrish had to concede that the data it insisted it needed to cure the defects in Miravete's model did not exist. HT-5:18-21. So it modified its position. It claimed that Miravete could use the existing data to develop an adequate model at some future point, but did not explain (1) how Miravete would do it or (2) why Miravete had not done so already. HT-5:15-17, 7:2-10.

In a 34-page order, the district court denied Parrish's motion on multiple, independent grounds. MDO:11-34. It held that Parrish:

- Did not satisfy Rule 23(a)'s typicality and adequacy requirements, MDO:11-18;

- Did not present a model capable of demonstrating antitrust impact and damages through common proof as Rule 23(b)(3) requires, MDO:18-31; and

- Did not meet the criteria for certification of an injunctive relief class under Rule 23(b)(2), MDO:31-34.

The district court deferred ruling on Bard's motion to exclude Miravete's analysis under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## ARGUMENT

Because interlocutory appeals "are disruptive, time-consuming, and expensive," *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005),[4] "the grant of a petition for interlocutory review constitutes the exception rather than the rule," *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009). Parrish's arguments do not meet this Court's standards for Rule 23(f) review. It has not presented a significant "unresolved issue of law relating to class actions that is likely to evade end-of-case review," nor has it demonstrated that the

---

[4] Unless otherwise indicated, internal quotation marks and citations are omitted, and emphasis is added.

district court made a "significant and readily ascertainable" manifest error. *See id.* at 1263-64.[5]

## I.    Parrish's petition does not present an unresolved issue of law relating to class actions that is likely to evade end-of-case review.

Both Tenth Circuit and Supreme Court precedent confirm that this case does not present an issue of first impression whose resolution would evade end-of-case review. Both this Court and the Supreme Court have previously addressed the scope of a district court's authority under Rule 23 when it (1) does not make an explicit finding that a reasonable juror could not credit the movant's expert testimony or (2) declines to exclude the expert testimony outright. *Contra* Pet. 5-6.

1. Less than a year ago, this Court squarely addressed the issue in *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161 (10th Cir. 2023), an antitrust class action in which the plaintiffs (like Parrish) alleged a violation of Section 2 of the Sherman Act and the parties (as here) presented expert testimony at class certification.[6] Parrish does not address or even cite *Black* in its petition.

---

[5] Parrish never argues that the class-certification order sounded the death knell for its case. That argument would be difficult to sustain given the Clayton Act's fee-shifting provision. *See* 15 U.S.C. § 4304.

[6] Petition of Defendants Pursuant to Federal Rule of Civil Procedure 23(f) at 17-18, *Occidental Petroleum Corp. v. Deselms*, No. 22-704 (10th Cir. May 10, 2022), Doc. No. 010110682866.

On issue after issue, this Court affirmed the process by which the district court conducted Rule 23's "rigorous analysis"—considering each party's expert evidence, weighing that evidence against Rule 23's requirements, and deciding to credit one party's expert over another (in *Black*, the plaintiffs' expert). *Id.* at 1177-78 (affirming the district court's "decision to credit Plaintiffs' definition of the relevant market" over defendants' expert's competing definition); *id.* at 1178 (finding no error in the fact that "[t]he district court acknowledged, but was ultimately unpersuaded by," non-movant's evidence on the market-power element). With respect to its analysis of antitrust impact under Rule 23(b)(3), this Court in *Black* affirmed the district court's careful weighing of the evidence and its authority to credit or reject expert evidence.[7]

*Black* did *not* hold that the district court erred in considering and weighing each party's evidence. Nor did it hold that the district court could not—without invoking the summary-judgment standard—find that the movant's expert methodology fell short of satisfying Rule 23's prerequisites (the lesson that Parrish draws from *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016), a case that *Black* interpreted). On the

---

[7] *See Black*, 69 F.4th at 1182 (noting with approval that "the district court carefully weighed the evidence" in "four pages of analysis"); *id.* at 1180 ("In determining whether antitrust impact presented a common issue, the district court considered both parties' evidence, but ultimately credited Plaintiffs' expert evidence[.]").

contrary, *Black* makes clear that district courts *must* weigh expert testimony where necessary to complete a rigorous Rule 23 analysis, and it affirmed that the decision is the *district court's* to make, so long as it is "based on the evidence presented" and "falls within the bounds of rationally available choices given the facts and law involved." 69 F.4th at 1177-78.[8]

It was only *after* the *Black* court concluded that the defendants' expert's critiques presented classwide merits defenses—and did not call plaintiffs' Rule 23 predominance showing into doubt—that it concluded the remaining expert disputes were "properly left for summary judgment or trial[.]" *Id.* at 1185. *Black* therefore rejected Parrish's fundamental claim—that a district court cannot weigh the evidence and deny certification if it determines that the plaintiff's evidence falls short of satisfying Rule 23's requirements. *See id.* at 1180.

2. Supreme Court precedent confirms that the legal issue presented here is not novel, and directly refutes the expansive and erroneous reading of *Tyson Foods* that Parrish advances.

In *Wal-Mart Stores, Inc. v. Dukes*, another case that Parrish omits from its petition, the Supreme Court reversed the grant of class certification even though the parties presented "countervailing

---

[8] *See also Vallario*, 554 F.3d at 1267 ("District courts ensure Rule 23's provisions are satisfied by conducting a rigorous analysis, addressing the rule's requirements through findings, regardless of whether these findings necessarily overlap with issues on the merits.").

statistical and other proof" through experts and the district court denied Wal-Mart's motion to strike the plaintiffs' expert testimony. 564 U.S. 338, 346, 354-58 (2011). The Supreme Court noted that overlap between Rule 23's "rigorous analysis" and merits issues "cannot be helped," *id.* at 351, and then analyzed one such area: the intersection between plaintiffs' proof of commonality and their "merits contention that Wal-Mart engage[d] in a pattern or practice of discrimination." *Id.* at 352 (emphasis omitted). The Court concluded that the plaintiffs' expert testimony, "*even if properly considered*, … d[id] nothing to advance [their] case." *Id.* at 354.

*Dukes* demonstrates that Parrish's argument is neither novel nor correct. The Court held that the district court—even if it was right to deny the defendant's *Daubert* motion—*should* have denied class certification because the expert's testimony was "worlds away from [the] significant proof" that Rule 23(a) demanded. *Id.* at 354-55 (cleaned up). The Court did *not* make any finding that a reasonable juror could not credit the expert's analysis; it simply held that the expert's testimony, taken at face value, did not demonstrate proof common to the class and thereby failed to satisfy Rule 23(a). *Id.*[9]

---

[9] The *Dukes* Court applied that same analysis to regressions that other experts prepared to show commonality. "Even if they are taken at face value," the Court explained, "these studies are insufficient to establish that respondents' theory can be proved on a classwide basis." 564 U.S. at 356-357.

Less than two years later, the Court reiterated the lesson in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). There, too, the Court reversed certification of a class even though the district court did not exclude the testimony of plaintiffs' expert, whose regression purported to demonstrate that antitrust impact and damages could be proven with common evidence. *Id.* at 31-32, 32 n.4. The plaintiffs contended that Comcast forfeited the right to argue that the expert's model did not satisfy Rule 23(b)(3) because it failed to move to exclude it. *Id.* But the Court disagreed. It held that Comcast may have forfeited the right to argue that the model was inadmissible, but nevertheless could argue— and *the Court* was free to conclude—"that *certification was improper* because [plaintiffs] failed to establish that damages could be measured on a classwide basis." *Id.*[10] And then the Court held—partly on the basis of the expert's admissions, and without once invoking the reasonable-juror standard—that his "model [fell] far short of establishing that damages [we]re capable of measurement on a classwide basis." *Id.* at 34.

The *Comcast* Court rebuked the court of appeals for "refusing to entertain arguments against [the expert's] model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination." *Id.* And even the

---

[10] Unlike Comcast, Bard moved to exclude Parrish's expert analysis. MDO:1.

dissenting justices agreed that Rule 23 empowered and obliged the district court to make factual findings about the model's adherence to Rule 23. *See id.* at 46-47 (Ginsburg and Breyer, JJ., dissenting). Simply put, *Comcast* decided Parrish's "issue of first impression" years ago. Pet. 1.

3. Parrish's argument that the district court contravened settled law in applying Rule 23 further undermines its claim that this case presents a novel issue. Pet. 5-7. To state the obvious: if the issue were novel, the court could not have contravened settled law. Regardless, the district court understood its obligation to "conduct[] a rigorous analysis" that "typically requires some consideration of the merits," but only "to the extent it is relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." MDO:8. It steered clear of deciding issues independent of the Rule 23 inquiry. *See, e.g.*, MDO:13-14, MDO:14 n.93 (the holding on typicality "d[id] not require [it] to improperly consider the merits of Parrish's claim"). And it carefully considered whether "the evidence presented" satisfied Parrish's Rule 23 burden and then made decisions that fell "within the bounds of rationally available choices given the facts and law involved." *See Black*, 69 F.4th at 1177-78.

*Exactly* as did the Supreme Court in *Dukes* and *Comcast*, the district court here concluded that the movant's expert testimony did not satisfy Rule 23 even when accepted at face value. *Compare* MDO:6

11

("[E]ven accepting the report and testimony of Dr. Miravete, Parrish's Motion for Class Certification fails[.]"), *with Dukes*, 564 U.S. at 356 ("Even if they are taken at face value, [plaintiffs' expert] studies are insufficient to establish that respondents' theory can be proved on a classwide basis."), *and Comcast*, 569 U.S. at 34 ("[R]espondents' model falls far short of establishing that damages are capable of measurement on a classwide basis."). *Nothing* in Parrish's petition calls that holding into question.

Parrish invokes the Ninth Circuit's recent decision in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc), *see* Pet. 9 n.3, but *Olean* does not help Parrish. It made clear that *Tyson Foods* and the reasonable-juror standard only become relevant *after* the district court decides the preliminary question under Rule 23(b)(3): whether "each class member could have relied on [the plaintiffs' evidence] to establish liability if he or she had brought an individual action[.]" *Id.* at 667 (quoting *Tyson Foods*, 577 U.S. at 455); *see id.* at 681 (reasoning that "whether the overcharge [the expert] calculated is probative" as to all purchasers in the class "is a question of persuasiveness for the jury once the evidence is sufficient to satisfy Rule 23") (quoting *Tyson Foods*, 577 U.S. at 459).[11]

---

[11] The district court here held that Parrish failed to make that initial showing. MDO:23.

*Olean* embraced what Parrish denies: that "[n]ot all expert evidence is capable of resolving a class-wide issue in one stroke," and "[c]ourts have frequently found that expert evidence, while otherwise admissible under *Daubert*, [i]s inadequate to satisfy the prerequisites of Rule 23." 31 F.4th at 666 n.9 (citing, *inter alia*, *Dukes* and *Comcast*).

Parrish cites another Ninth Circuit case, *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014), for the proposition that "caselaw is replete with courts explaining that [it] is the province of the jury to weigh dueling expert opinions." Pet. 6 n.1. But it was the Ninth Circuit that held in the class-certification context that a district court erred when it "end[ed] its analysis of the plaintiffs' evidence after determining such evidence [i]s merely admissible" and then declined to resolve a battle of the experts on the commonality element. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

Parrish cites *Caridad v. Metro-North Commuter Railroad*, 191 F.3d 283, 291 (2d Cir. 1999), for the proposition that a court "may not weigh conflicting expert evidence or engage in statistical dueling of experts" at class certification. Pet. 6 n.1. But the Second Circuit later abandoned *Caridad*'s rule and the notion "that an expert's testimony may establish a component of a Rule 23 requirement simply by being not fatally flawed." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re*

*Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007). It instructed district courts "to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *Id.*

Finally, Parrish brandishes the D.C. Circuit's unpublished opinion in *National ATM Council, Inc. v. Visa, Inc.*, No. 21-7109, 2023 WL 4743013 (D.C. Cir. July 25, 2023), and insists that it "made clear that expert battles about whether 'members were harmed' [are] 'precisely the kind of material factual dispute that is better suited for adjudication of plaintiffs' injury and damages on the merits.'" Pet. 6.

*National ATM* stands for the unremarkable proposition that "[a] defendant does not defeat predominance simply by offering a contrary statistical model that the ultimate factfinder might or might not embrace." *National ATM,* 2023 WL 4743013, at *9. It held that "[p]laintiffs must present creditable evidence from which questions common to the class members' claims could be resolved at trial in one stroke," *id.* at *6—exactly what the district court found Parrish failed to do here. *National ATM* never endorsed Parrish's position: that a district court cannot decide that expert testimony does not satisfy Rule 23's requirements unless it also excludes the testimony or makes an explicit finding that no reasonable juror could credit it.

Nor could it. In *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 934 F.3d 619 (D.C. Cir. 2019), the D.C. Circuit affirmed the denial of class certification in exactly that posture, and expressly declined to "read *Tyson Foods* as holding that a court may assess [expert testimony's] reliability only in deciding admissibility or summary judgment," *id.* at 623. The *National ATM* court saw no reason to revisit that conclusion. 2023 WL 4743013, at *4. The same is true here.

And because Parrish never attempts to demonstrate that resolution of its question "is likely to evade end-of-case review," *see Vallario*, 554 F.3d at 1263, the Court should reject Parrish's first basis for Rule 23(f) review.

## II.    The district court did not make manifest errors in considering evidence and making findings essential to its Rule 23 determination.

As set forth immediately above, the district court's approach was grounded in controlling authority, and it did not err in finding that Parrish's evidence did not satisfy Rule 23. *See Chamberlan*, 402 F.3d at 962 (manifest error "is difficult to show … unless the district court applies an incorrect Rule 23 standard or ignores a directly controlling case").[12] What Parrish really seeks is a do-over of those findings, the very type of micromanaging that this Court declines to do on Rule 23(f)

---

[12] *Accord Vallario*, 554 F.3d at 1263 n.4.

review or otherwise. *Vallario*, 554 F.3d at 1263 (Rule 23(f) review is not "a vehicle to micromanage class actions"); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) ("The decision whether to grant or deny class certification involves intensely practical considerations and therefore belongs within the discretion of the trial court.").

1. Parrish first takes issue with the district court's findings on Rule 23(a)'s adequacy and typicality elements. On three separate occasions, Parrish accuses the district court of manifest error in "ignoring its own findings" and improperly reaching the merits of whether class members suffered any antitrust price impact. Pet. 7 (adequacy), 8 (typicality), 11-12 (typicality again). But the district court *declined* to reach any merits question on impact, and discussed impact only in connection with "determining whether the Rule 23 prerequisites for class certification [we]re satisfied." MDO:8.

The district court's typicality findings did not turn on whether Parrish *actually* suffered injury. MDO:14 n.93. The court did not hold Parrish was uninjured; rather, it explained that "Parrish's atypical situation raises a compelling question as to whether it has suffered any antitrust injury," and that question "will likely become a major focus of the litigation." *Id.*[13] Similarly, the court made an undisputed finding

---

[13] *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may

that "Parrish is distinct from most proposed class members" because it *never* purchased the "bundle" and *only* purchased the allegedly tied product (the PICC). MDO:14. "At trial," the court reasoned, "Parrish would have to prove it suffered an unlawful overcharge on the standalone PICC," but that showing "would *not* prove purchasers of the bundle were similarly overcharged." *Id.*[14]

The same dynamic unfolded again on adequacy. On the basis of Parrish's concession that its proposed class is heterogenous and highly differentiated (HT-13:4-19), Parrish's expert testimony, Bard's expert testimony, basic economic principles, and record evidence of price-insensitive purchasers whom Bard would be able to identify and upcharge in the absence of the alleged tie, the court found it likely that at least *some* putative "class members benefit from the conduct allegedly injuring others." MDO:17.[15]

---

destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation.").

[14] *See* Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 1769c (4th & 5th eds. 2023) (explaining that it is "quite wrong" to assess injury and damages for purchasers of the "bundle" based on an overcharge for the tied product alone).

[15] That conclusion finds support in a leading antitrust damages treatise. *See* Am. Bar Ass'n, Proving Antitrust Damages: Legal and Economic Issues § III.8.E.5 (2017 ed.) ("In any case where the tying arrangement is a method of price discrimination and the alternative to the tie is a single, monopoly price for the tying product ... *some consumers are likely to be made better off by the tie and others worse off*.").

In making that finding and its corollary—that this fundamental conflict destroyed adequacy—the court declined to resolve a battle of the experts or reach the merits of the injury issue. *Id*. It could and did draw the only conclusions necessary "[t]o preclude a finding of adequacy under Rule 23(a)(4)": that the conflict was "fundamental to issues at the heart of the litigation and more than speculative in nature." *See* 6 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 20:45 (6th ed. 2022).

2. Parrish's next argument also falls flat—it claims that the district court committed manifest error in its Rule 23(b)(3) predominance analysis by "repeatedly making findings about the persuasiveness" of Parrish's expert and "implicitly repeatedly crediting the criticisms of Bard's expert." Pet. 4. Miravete's admissions and Parrish's own empty promises that it might someday develop a workable methodology afforded the district court all it needed to deny certification. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008) ("A party's assurance to the court that it intends or plans to meet [Rule 23's] requirements is insufficient."); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977) (where "there are serious problems" with the movant's methodology, the court "should not certify the class merely on the assurance of counsel that some solution will be found").

First, Parrish insists that the district court foreclosed the use of regression and benchmarking analyses to satisfy Rule 23(b)(3)'s

18

predominance requirement. *E.g.*, Pet. 9 (arguing that the district court's rejection of its expert's regression "essentially means no regression model could ever satisfy Rule 23"). Not so. The court "d[id] not dispute" that "regression models are commonly accepted" as a means of "isolat[ing] the impact of [an] alleged antitrust violation[] on the prices paid by class members," and it acknowledged that "benchmarking is a technique widely used by economists and the courts to estimate class-wide antitrust price injury." MDO:25-26.

Rather, the district court rejected *Parrish's* regression and benchmarking analysis. "Simply having a regression model," the court explained, "does not end the inquiry. That model must actually serve a purpose." MDO:26. It found Parrish's regression to be "the statistical equivalent of a tautological statement" that could not, in conjunction with Parrish's benchmarks or otherwise, "show antitrust impact through common proof." MDO:25; *Cf. Dukes*, 564 U.S. at 356 (holding plaintiffs' regression analyses, "[e]ven if they are taken at face value, … insufficient to establish that respondents' theory can be proved on a classwide basis."). Similarly, it found that Parrish's benchmarking analysis unreasonably assumed "that Bard's conduct affects purchasers equally and in the same way" and did nothing "to show that all or nearly all purchasers were overcharged in that amount, or in any amount at all." MDO:27.

19

These conclusions find their grounding in Parrish's admissions. Its expert testified that his model could not be used to determine how much Parrish, for instance, overpaid for Bard PICCs. MT-60:1-4. And Parrish acknowledged in its briefing that the model could not show antitrust impact for *any* purchaser of Bard's standalone PICCs, like itself. Dkt. 139 at 17. On that record, where the question was whether Parrish's model would "suffice for each [class] member to make a prima facie showing" of antitrust impact in his or her individual case, *see Tyson Foods*, 577 U.S. at 453, the district court did not err in answering "no."

Finally, Parrish challenges the district court's finding that its expert's "benchmark method of estimating monopoly overcharging is not capable of differentiating the effect of lawful and unlawful conduct[,]" as it needed to do to comply with *Comcast*. Pet. 10.[16] Yet Parrish *acknowledges* that its expert cannot "separate the overcharg[e] on PICCs versus the PICC and TLS bundle," *id.*—*i.e.*, it cannot "disaggregate Bard's allegedly unlawful margins on PICCs from its lawful margins on TLS[,]" MDO:29.

There is no dispute about this foundational deficiency, but Parrish persists in arguing that the district court could not consider it at class certification. Pet. 10. That argument would overrule *Comcast*, in which

---

[16] *See Comcast*, 569 U.S. at 37 (an antitrust class-certification methodology "that identifies damages that are not the result of the wrong" cannot support certification under Rule 23(b)(3)).

the Court explicitly held that in an antitrust case, a "model's inability to bridge the differences between supra-competitive prices in general and supra-competitive prices attributable" to the challenged conduct make it unfit to serve as a basis for certification under Rule 23(b)(3). 569 U.S. at 38. Following Parrish's advice to ignore *Comcast*, a "directly controlling case," would have required the district court to commit manifest error. *See Chamberlan*, 402 F.3d at 962.

*   *   *

Contrary to Parrish's assumptions, the district court did not make any manifest error that justifies immediate review under Rule 23(f). It made comprehensive findings under Rule 23 that provide ample support for its decision. That is exactly what Tenth Circuit law requires. *See Vallario*, 554 F.3d at 1267 ("District courts … address[] the rule's requirements through findings, regardless of whether these findings necessarily overlap with issues on the merits.").

## III.  The district court did not err in denying certification of a Rule 23(b)(2) class.

The district court correctly denied the motion to certify a Rule 23(b)(2) class as well. This afterthought in Parrish's case—which it raised below "[i]n a single cursory paragraph at the end of its Motion and Reply briefs," MDO:31—is hopelessly inadequate, even setting aside the district court's independent finding that Parrish failed to satisfy the typicality and adequacy components under Rule 23(a).

21

Parrish incorrectly asserts that the district court neglected to "conceive of an injunction that comports" with Rule 23 and Rule 65, Pet. 14 (quoting *Vallario*, 554 F.3d at 1268), and "ignore[d] the only reasonable interpretation" of its request for injunctive relief, *id.*[17] Parrish fashioned this argument by excerpting out the portion of *Vallario* making it clear that the party seeking class certification, and not the district court, bears the burden to describe the proposed equitable relief in adequate detail.[18] And Parrish's insistence that the district court ignored the only reasonable interpretation of its request for injunctive relief cannot be reconciled with the formless wording of its request or the Tenth Circuit standards that it failed to meet.

*Vallario*'s holding applies with equal force here: requests for classwide injunctive relief that "seek to enjoin a wide range of behavior," "operate[] at some stratospheric level of abstraction," or "eschew any effort to give content to the equitable relief they request"

---

[17] Parrish included the following request at the very end of its class-certification brief: "[t]o the extent Bard maintains its PICC market power by its exclusionary conduct, all this conduct should be enjoined because Bard has acted on grounds generally applicable to the proposed Class." Dkt. 139 at 23.

[18] *Compare* Pet. 14 ("[T]he question is whether the District Court can 'conceive of an injunction that comports' with the Rules."), *with Vallario*, 554 F.3d at 1267-68 ("*[A] motion for class certification must describe the equitable relief sought in sufficient detail* that the district court can conceive of an injunction that comports with the requirements of Rules 23(b)(2) and 65(d).").

flunk the test under Rules 23(b)(2) and 65. 554 F.3d at 1268. Because that description fits Parrish's request like a glove, the district court's denial of certification under Rule 23(b)(2) does not present any basis for immediate review.

## CONCLUSION

For the foregoing reasons, the Court should deny Parrish's Rule 23(f) petition for permission to appeal.

Dated: January 22, 2024

Respectfully submitted,

/s/ *Andrew J. Frackman*

ANDREW J. FRACKMAN
 *Counsel of Record*
COLLEEN POWERS
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

SERGEI ZASLAVSKY
BRIAN P. QUINN
EMILY MURPHY
O'MELVENY & MYERS LLP
1625 Eye Street N.W.
Washington, D.C. 20006
(202) 383-5300

ANDREW G. DEISS
COREY D. RILEY
DEISS LAW PC
10 West 100 South
Suite 700
Salt Lake City, UT 84101
(801) 433-0226

*Counsel for Respondents*
*C. R. Bard, Inc. and Bard*
*Access Systems, Inc.*

## FEDERAL RULE OF APPELLATE PROCEDURE 28(f) ADDENDUM

**Federal Rule of Civil Procedure 23. Class Actions**

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

. . .

(f) Appeals. A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer

or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Fed. R. App. P. 5 and 32(a)(5)(A) because, excluding the parts exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), the brief contains 5,196 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(b) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


Dated: January 22, 2024                   /s/ *Andrew J. Frackman*
                                          ANDREW J. FRACKMAN
                                          *Counsel for Respondents*

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that (1) all required privacy redactions have been made from this brief per 10th Cir. R. 25.5; (2) this ECF submission is an exact copy of any hard copies that will be submitted to the Court; and (3) this brief has been scanned for viruses by Microsoft Defender (Anti-Virus Version 1.403.2519.0), last updated on January 22, 2024, and, according to the program, is free of viruses.

Dated: January 22, 2024

/s/ *Andrew J. Frackman*
ANDREW J. FRACKMAN
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I electronically filed the foregoing Answer in Opposition to Parrish Medical Center's Petition for Permission to Appeal Under Federal Rule of Civil Procedure 23(f) with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. I certify that all interested parties in this case are registered CM/ECF users.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Dated: January 22, 2024

/s/ *Andrew J. Frackman*
ANDREW J. FRACKMAN
*Counsel for Respondents*